**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LONG SIDE VENTURES LLC, R & T SPORTS MARKETING INC., SIERRA TRADING CORP., TACONIC GROUP LLC, KBW HOLDINGS LLC, ROBERT HUEBSCH and ANN E. HUEBSCH, JOSEPH CAMBERATO, JOSEPH CROOK, SACHIN JAMDAR, MICHAEL MATILSKY, GERARD SCOLLAN, and DAISY ARNOLD,** | |
| *Plaintiffs,* | |
| -against- | **22-cv-08152 (ALC)** |
| | **OPINION** |
| **HEMPACCO CO., INC., MEXICO FRANCHISE OPPORTUNITY FUND, LP, SANDRO PIANCONE, JORGE OLSON, NEVILLE PEARSON, STUART TITUS, JERRY HALAMUDA, RETAIL AUTOMATED CONCEPTS, INC. f/k/a VIDBOX MEXICO INC. and VIDBOX MEXICO S.A. de C.V.,** | |
| *Defendants.* | |

**ANDREW L. CARTER, JR., District Judge:**

Plaintiffs Long Side Ventures LLC, R & T Sports Marketing Inc., Sierra Trading Corp.,

Taconic Group LLC, KBW Holdings LLC, Robert Huebsch, Ann E. Huebsch, Joseph

Camberato, Joseph Crook, Sachin Jamdar, Michael Matilsky, Gerard Scollan, and Daisy Arnold

filed this action against Defendants Retail Automated Concepts, Inc. f/k/a Vidbox Mexico Inc.

("RAC" or "Vidbox") and Vidbox Mexico S.A. de C.V. ("Guarantor") (collectively "Judgment

Debtors")[1]; Hempacco Co., Inc. ("Hempacco"), Mexico Franchise Opportunity Fund, LP

("MFOF"); and Sandro Piancone, Jorge Olson, Neville Pearson, Stuart Titus, Jerry Halamuda

---

[1] Vidbox Mexico and Guarantor have not appeared in this action.

1

(collectively, "Individual Defendants"). ECF No. 1, Compl. Plaintiffs allege that Hempacco,

MFOF, and the Individual Defendants engaged in fraudulent transactions to strip Vidbox of

assets sufficient to satisfy a state court judgment for Plaintiffs, and aimed to prevent enforcement

of the judgment. *Id.* at ¶ 7. Plaintiffs allege personal jurisdiction on four bases: (1) a forum

selection clause contained in Section 9.13 of the Securities Purchase Agreements ("SPAs"); (2)

the New York long-arm statute; (3) alter-ego jurisdiction; and (4) successor liability jurisdiction.

Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure

12(b)(2) and Federal Rules of Civil Procedure 12(b)(6). ECF No. 19. Defendants' motion to

dismiss, ECF No. 19, is hereby **GRANTED** pursuant to Fed.R.Civ.P. 12(b)(2) for lack of

personal jurisdiction against all Defendants with respect to Plaintiffs' theories of jurisdiction

under the (1) New York long-arm statute; (2) alter-ego jurisdiction; and (3) successor liability

jurisdiction. Defendants' motion is also **GRANTED** pursuant to Fed.R.Civ.P. 12(b)(2) with

respect to Plaintiffs MFOF, Hempacco, Pearson, Titus and Halamuda under Plaintiffs' theory of

jurisdiction under the forum selection clause.

Defendants' motion to dismiss is **DENIED** with respect to Plaintiffs' claims against

Piancone and Olson under Plaintiffs' theory of jurisdiction pursuant to the forum selection

clause. Plaintiffs are **GRANTED** leave to amend their Complaint and to pursue jurisdictional

discovery.

## BACKGROUND

### I.     Statement of Facts

Vidbox Mexico is a corporation organized under the laws of Nevada, with its principal

place of business in Nevada. Compl. at ¶ 20. Guarantor is a foreign corporation organized under

the laws of Mexico, and Vidbox Mexico's subsidiary. *Id.* at ¶¶ 22-23. Vidbox Mexico operates a

2

DVD, Blue-ray, and 4k UHD rental company, distributed via automated kiosks, and it is located in Mexico. *Id.* at ¶ 63. Piancone is the president of Vidbox Mexico and owns approximately 25% of the outstanding shares of the company. *Id.* at ¶¶ 86-87. Olson is a controlling officer of Vidbox Mexico. *Id.* at ¶ 94.

Hempacco is a corporation organized under the laws of Nevada, with its only place of business located in California. *Id.* at ¶¶ 31, 106. Hempacco sells hemp and CBD products at automated kiosks. *Id.* at ¶¶ 105, 142. Piancone is the C.E.O. of Hempaco, Olson is its Chief Marketing Officer, and Pearson, Titus and Halamuda are officers. *Id.* at ¶¶ 97-99.

MFOF is a limited partnership organized under the laws of Canada with its only place of business in Nevada. *Id.* at ¶ 38. Piancone and Olson own approximately 31% and 25% of the outstanding shares of MFOF. *Id.* at ¶¶ 89, 92. Piancone, Olson, Titus, and Halamuda are residents of California and Pearson is a resident of Arizona. *Id.* at ¶¶ 46-50. Plaintiffs are residents of Florida or New York. *Id.* at ¶¶ 8-19.

On May 9, 2018, Plaintiffs loaned between $25,000 and $100,000 to Vidbox Mexico pursuant to Securities Purchase Agreements ("SPAs") and promissory notes ("Notes").[2] *Id.* at ¶¶ 1-2, 65, 75. Vidbox Mexico promised to repay each Plaintiff the principal amount invested, plus a lump interest payment due on the maturity date of their respective Note. *Id.* at ¶ 68. Section 9.13 of the SPAs contains a New York, NY forum selection clause for "any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein."[3] *Id.* at ¶ 60; ECF No. 20, Sandro Piancone Decl., Ex. A, SPA, § 9.13. Vidbox defaulted on the 2018 loans provided by Plaintiffs, and in October 2020, Plaintiffs commenced an action in the

---

[2] Plaintiffs refer to the Notes but did not append a copy to their Complaint.

[3] The Court may consider the terms of the SPA because in Plaintiffs' Complaint, the SPA is explicitly incorporated by reference. Compl. at ¶¶ 60, 65-66. "Courts may consider the facts from 'documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint,' including contracts. *Novartis Pharma AG v. Incyte Corp.*, 520 F. Supp. 3d 514, 524 (S.D.N.Y. 2021) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010)) (citations omitted).

Supreme Court of the State of New York, County of New York, index number 654885/2020 ("State Court Action") against Vidbox Mexico and Guarantor. Compl. at ¶¶ 3, 73-84. On July 14, 2021, Plaintiffs were awarded a judgment in the amount of $827,821.23, plus post-judgment interest ("Judgment"), against the Judgment Debtors. *Id.* at ¶¶ 4, 79. The Judgment Debtors have not made any payments. *Id.* at ¶¶ 83-84.

In or around January 2019, Vidbox stated it was closing its doors. *Id.* at ¶ 70. On or around March 22, 2019, Plaintiffs received a letter from the then-C.E.O. of Vidbox and RAC Brian Zamudio stating that Vidbox would transition from video rentals to the CBD and hemp industry. *Id.* at ¶¶ 70-71. Plaintiffs allege that instead "Vidbox Mexico essentially ceased operations" and "became inactive." *Id.* at ¶ 73.

Plaintiffs allege that in or around 2019, prior to the commencement of the State Action, Piancone and Olson "misappropriate[ed] the assets of Vidbox Mexico to fund the startup of Hempacco's new business by using Vidbox Mexico's office space, officers, personnel, and Kiosks to conduct business for the benefit of Hempacco at the expense of Plaintiffs' ability to enforce the Judgment." *Id.* at ¶¶ 109-112. Plaintiffs allege that Defendants fraudulently transferred 600 kiosks worth $3.6 million from Vidbox Mexico to MFOF "without any articulable consideration." *Id.* at ¶¶ 116-118, 166. However, Defendants contend that long before Plaintiffs loaned Vidbox Mexico funds in 2018, "Vidbox Mexico originally sold the 600 automated retail kiosks to MFOF in 2016 and 2017 for $7.5 million as part of two sale-lease back agreements." ECF No. 21 at 9-10, 31.

Later, in October 2019, MFOF transferred these kiosks to Hempacco for a total value of $3,638,357, but Plaintiffs contend no consideration was exchanged. *Id.* at ¶¶ 120, 122-123. Defendants argue MFOF received 8,000,000 Series A Preferred Shares of Hempacco in the

transaction. ECF No. 21 at 10, 31. Hempacco uses these kiosks to distribute hemp/CBD products. *Id.* at ¶¶ 140-142.

In their Complaint, Plaintiffs allege that the transfer of the kiosks were fraudulent and in violation of the Section 11(f) of the Notes. *Id.* at ¶ 115. Pursuant to Section 11(f), Vidbox Mexico would not "sell, lease or otherwise dispose of any significant portion of Obligor's or any Subsidiary's assets outside the ordinary course of business" "without the prior consent of the holders of a majority of the Principal amount of the Notes then outstanding." *Id.* (internal quotation marks omitted). "Hempacco and MFOF, through Piancone and Olson, exercised complete domination and control over Vidbox Mexico with respect to the . . . fraudulent transactions" to transfer "the Kiosks without Plaintiffs' consent" "to MFOF without any articulable consideration." *Id.* at ¶¶ 116-118, 156. Plaintiffs claim "Hempacco, MFOF, Piancone, and Olson are carrying on the assets of Vidbox Mexico, including, but not limited to the Kiosks, as if those assets were their own." *Id.* at ¶ 149.

Plaintiffs allege Defendants undertook the transfer of the kiosks to frustrate the ability of Vidbox Mexico and Guarantor to satisfy the Judgment. *Id.* at ¶¶ 109-112. "Vidbox Mexico does not have sufficient assets to satisfy the Judgment due to the fraudulent transfer of the Kiosks." *Id.* at ¶ 126. However, in their Complaint, Plaintiffs do not specifically allege that Vidbox Mexico is undercapitalized. Piancone defaulted on the payment of storage fees for Vidbox Mexico's other kiosks held in Ohio, rendering them unusable and also frustrating Plaintiffs' ability to enforce the Judgment. *Id.* at ¶¶ 128-129. The kiosks in Ohio are in a condition "such that the kiosks are virtually unusable without undergoing extensive refurbishment at significant costs." *Id.* at ¶ 130. In addition, Plaintiffs allege Defendants "likely" transferred "other valuable assets" but do not

detail what those other assets are, or if these assets were transferred in the same Vidbox Mexico and MFOF transaction. *Id.* at ¶¶ 5, 85.

Plaintiffs allege that due to an overlap in Vidbox Mexico's directors and shareholdership, Hempacco, MFOF, and Individual Defendants are the alter-egos and/or successors of Vidbox Mexico. *Id.* at ¶¶ 133-134, 143-150.

## II.    Procedural History

On November 28, 2022, Plaintiffs filed their complaint. ECF No. 1. Plaintiffs set forth six causes of action: (1) enforcement of the Judgment against Hempacco, MFOF, Piancone, and Olson as alter-egos of Vidbox Mexico (Compl. at ¶¶ 151-161); (2) enforcement of the Judgment against Hempacco, MFOF, Piancone, and Olson as successors to Vidbox Mexico (*id.* at ¶¶ 162-172); (3) fraudulent transfer under Debtor and Creditor Law ("D.C.L.") § 276 against Defendants (*id.* at ¶¶ 173-187); (4) in the alternative, fraudulent transfer under Debtor and Creditor Law ("D.C.L.") § 273 against Defendants (*id.* at ¶¶ 188-203); (5) tortious interference with enforcement of a judgment against Defendants (*id.*, ¶¶ 204-217); and (6) conversion against Defendants (*id.* at ¶¶ 218-226). Plaintiffs allege personal jurisdiction on four bases: (1) a forum selection clause contained in Section 9.13 of the Securities Purchase Agreements ("SPAs"); (2) the New York long-arm statute; (3) alter-ego jurisdiction; and (4) successor liability jurisdiction. On December 30, 2022, Defendants moved to dismiss the Complaint. ECF No. 19.

## STANDARD OF REVIEW

## I.    Federal Rules of Civil Procedure 12(b)(2)

On a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729

F.3d 215, 217 (2d Cir. 2013) (internal quotation marks and citation omitted). Plaintiff's burden "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). To survive a Rule 12(b)(2) motion, "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 742 (2d Cir. 2020). Prior to discovery, a plaintiff's "prima facie showing may be established solely by allegations." *Dorchester*, 722 F.3d at 85. This showing "must include an averment of facts that, if credited by the trier [of fact], would suffice to establish jurisdiction[.]" *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). The Court will "not draw argumentative inferences in the plaintiff's favor" and will not "accept as true legal conclusions couched as a factual allegation[.]" *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (internal citation omitted); *see also Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala,* 989 F.2d 572, 580 (2d Cir.1993) ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.") (internal quotation marks omitted).

## II.    Federal Rules of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### III.    Personal Jurisdiction

Defendants are not residents of New York. Compl. at ¶¶ 31, 38, 46–50. In a diversity action,[4] "personal jurisdiction is determined by the law of the state in which the district court sits[.]" *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). When a forum selection clause exists, the court employs a two-part test to determine jurisdiction:

> First, the Court must decide whether the personal jurisdiction over [Plaintiffs'] claims are supplied by a forum selection clause. If so,

---

[4] Plaintiffs bring this action based on diversity jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 and the parties are diverse.

> the analysis ends there. *See D.H. Blair & Co. v. Gottdiener*, 462
> F.3d 95, 103 (2d Cir. 2006) . . . . Second, to the extent that the
> forum selection clause does not supply personal jurisdiction over a
> particular claim or claims, the Court inquires whether there is
> personal jurisdiction over [defendants] under principles of New
> York law, based either on general jurisdiction, *see* New York Civil
> Practice Law and Rules ("CPLR") § 301, or specific jurisdiction,
> *see* CPLR § 302. If jurisdiction is found on either ground, the
> Court then inquires whether "an exercise of jurisdiction under
> these laws is consistent with federal due process requirements."
> *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165
> (2d Cir. 2005); *see generally Burger King Corp. v. Rudzewicz*, 471
> U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

*MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 746 (S.D.N.Y. 2020). *See also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) (setting forth the analysis for statutory personal jurisdiction).

### a.   Forum Selection Clause

Plaintiffs cite to the New York, NY forum selection clause contained in Section 9.13 of the SPA. Compl. at ¶ 60.

> Each of the Company and the Investors hereby irrevocably submits
> to the exclusive jurisdiction of the state and federal courts sitting in
> the City of New York, Borough of Manhattan for the adjudication
> of any dispute hereunder or in connection herewith or with any
> transaction contemplated hereby or discussed herein[.]

SPA, § 9.13. The Court may consider the terms of the SPA because in Plaintiffs' Complaint, the SPA is explicitly incorporated by reference. Compl. at ¶¶ 60, 65-66. *See Novartis Pharma*, 520 F. Supp. 3d 524. In this case, Vidbox Mexico and its investors agreed to be bound by the SPA and subject to the forum selection clause. However, Plaintiffs are signatories seeking to enforce the clause against Vidbox Mexico and non-signatory Defendants.

In the Second Circuit, a non-signatory to a contract "may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (citation omitted).

"[T]he relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id.* (citation omitted). Enforcement of a forum selection clause is "foreseeable" if either "[1] the non-signatory had an active role in the transaction between the signatories or [2] where the non-signatory had an active role in the company that was the signatory." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 325 (S.D.N.Y. 2017). *See also Recurrent Capital Bridge Fund I, LLC v. ISR Syss. & Sensors Corp.*, 875 F.Supp.2d 297, 306 (S.D.N.Y. June 25, 2012) (enforcement is foreseeable when "the non-signatory must have been otherwise involved in the transaction in some manner.").

"While the Second Circuit has not reached the question of when a signatory may enforce a forum selection clause against a non-signatory, numerous district court cases in this Circuit have embraced the 'closely related' standard in cases analogous to this one." *Prospect Funding*, 256 F. Supp. 3d at 324 (finding entities with extensive involvement and authority under a sublicense agreement were closely related) (collecting cases). As such, the Court will apply the "closely related" standard to determine whether Plaintiffs may enforce the SPA's forum selection clause against non-signatory Defendants. *See MGM Studios Inc. v. Canal & Distrib. S.A.S.*, No. 07-CIV-2918 (DB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) ("Under New York law, a signatory to a contract may invoke a forum selection clause against a non-signatory if the non-signatory is closely related to one of the signatories[.]") (internal quotation marks and citations omitted).

Here, Plaintiffs appear to allege that non-signatory Defendants are "closely related" to Vidbox Mexico. This is demonstrated by Plaintiffs' alter ego and/or successor theories of

jurisdiction against Hempacco, MFOF, and Individual Defendants. Compl. at ¶¶ 133-134, 143-150. For the same reasons that Plaintiffs failed to sufficiently allege alter ego and/or successor theories of jurisdiction detailed below, Plaintiffs have not successfully alleged that non-signatory Defendants Hempacco, MFOF, and Individual Defendants Pearson, Titus and Halamuda are "closely related" to Vidbox Mexico. *See Elec. Mobile Cars, LLC v. Elec. Mobile Cars, Inc.*, 5264454, at *1-2 (S.D.N.Y. Oct. 17, 2012) (finding a close relationship between a signatory and non-signatory that were alter egos was sufficient to bind non-signatory to a forum selection clause); *Southridge Partners II Ltd. P'ship v. SND Auto Grp., Inc.*, No. 3:17-CV-1925 (KAD), 2019 WL 6936727, at *6 (D. Conn. Dec. 19, 2019) (facts alleged "support the inference that [entity] is a successor-in-interest or an alter ego" "which would warrant enforcement of the forum selection clause[.]"). Plaintiffs have not alleged that Hempacco, MFOF, Pearson, Titus and Halamuda were in any way involved with the SPAs Plaintiffs entered into with Vidbox Mexico, and therefore enforcement of the forum selection clause against these Defendants was not foreseeable. Therefore, Plaintiffs cannot enforce the forum selection clause against non-signatories Hempacco, MFOF, Pearson, Titus and Halamuda.

However, Plaintiffs may be able to enforce the clause against Individual Defendants Piancone and Olson due to their corporate leadership positions at Vidbox Mexico. Compl. at ¶¶ 86-87, 94. Piancone is the president of Vidbox Mexico and owns approximately 25% of the outstanding shares of the company. *Id.* at ¶¶ 86-87. Olson is a controlling officer of Vidbox Mexico. *Id.* at ¶ 94. In *Firefly Equities, LLC v. Ultimate Combustion Co.*, the court held a president of signatory entity was related to an entity "closely enough that he should be bound by the forum selection clause to which he agreed on [entity's] behalf" even when president signed the agreement in his representative rather than individual capacity. 736 F. Supp. 2d 797, 800

(S.D.N.Y. 2010). "[I]t was—or should have been—foreseeable to him that the clause might have application to disputes arising under that agreement that also involved him." *Id. See also GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329, at \*4 (S.D.N.Y. Jan. 23, 2019) (president and vice president were "'closely related' enough to the dispute to be bound by the [] jurisdictional provision."); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt., LLC*, 2003 WL 22882137, at \*5-6 (S.D.N.Y. Dec. 4, 2003) (non-signatory Chief Financial Officer was "closely related" to her signatory company's transaction by virtue of her position, "such that it was foreseeable that she would be bound by the Forum Selection Clause[.]"). In this case, Piancone signed the SPAs in his representative capacity on the entity's behalf. *See* ECF No. 20, Piancone Decl., Ex. A, SPA at 26. He was therefore involved in the agreement at issue. Despite being a non-signatory, Olson may be bound by the clause under the "closely related" test because his position as a controlling officer of Vidbox Mexico is similar to that of the CFO in *Nanopierce*. 2003 WL 22882137, at \*5-6 (directors on party corporation may be held liable to forum selection clause). Due to their close relationship to the transactions, both Individual Defendants could foresee being bound by the forum selection clause. For the reasons stated above, the Court finds Plaintiffs' claims against Hempacco, MFOF, and Individual Defendants must be dismissed for lack of personal jurisdiction under Plaintiffs' forum selection clause argument. The Court may exercise personal jurisdiction over Plaintiffs' claims against Piancone and Olson on the basis that these Defendants are "closely related" to Vidbox Mexico due to their corporate leadership positions at that entity.

### b.  Specific Jurisdiction Under New York's Long-Arm Statute

Because the forum selection clause does not supply personal jurisdiction over Plaintiffs' claims against Defendants MFOF, Hempacco, Pearson, Titus and Halamuda, the Court next inquires whether there is personal jurisdiction under New York's long-arm statute. N.Y. C.P.L.R.

§ 302(a)(1) provides that a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," so long as the plaintiff's "cause of action aris[es] from" that "transact[ion]." *Id.* To examine whether a court may exercise personal jurisdiction pursuant to § 302(a)(1), "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action aris[es] from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal citation and quotation marks omitted). A non-domiciliary defendant must "engage[] in 'purposeful activity,' for example 'some act which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 412 (S.D.N.Y. 2021) (quoting *Best Van Lines*, 490 F.3d at 246–47). Plaintiffs must establish "an articulable nexus, or a substantial relationship" between their claims and actions taken in New York. *Best Van Lines*, 490 F.3d at 246.

In their Complaint, Plaintiffs appear to allege jurisdiction on the basis of § 302(a)(1). Plaintiffs do not address this allegation in their opposition. Plaintiffs allege "[e]ach of the Defendants has sufficient minimum contacts with the State of New York" and "[e]ach of the Defendants regularly conducts business within the State of New York, and/or maintains offices in New York and/or engages in substantial activity in New York." *Id.* at ¶¶ 56–58. But the burden is on the plaintiff to establish jurisdiction with specificity. A plaintiff cannot survive a motion to dismiss by pleading only "conclusory non-fact-specific jurisdictional allegations[.]" *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (internal quotation marks omitted); see also *See Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 333 (S.D.N.Y. 2018) (Plaintiffs "must make allegations establishing jurisdiction with some factual specificity

and cannot establish jurisdiction through conclusory assertions alone"). Plaintiffs have not provided facts to support the contention that Defendants have regularly conducted business within New York because the Complaint does not describe Defendants' purported contacts with any specificity. As such, it is improper for the Court to exercise jurisdiction on the basis of § 302(a)(1). The Complaint does not allege a sufficient statutory basis for this Court to exercise personal jurisdiction over Defendants under § 302(a)(1).

Under N.Y. C.P.L.R. § 302(a)(3)(ii), specific jurisdiction may also be exercised over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Id.* Plaintiffs are residents of Florida or New York. *Id.* at ¶¶ 8-19. In their opposition, Plaintiffs argue the Court may exercise personal jurisdiction over Defendants under § 302(a)(3)(ii) because Defendants committed tortious acts outside New York causing injury to Plaintiffs and "should reasonably expect the act to have consequences in the state." However, Plaintiffs failed to include this basis for specific jurisdiction in their Complaint or plead any facts in support of this basis. The Court disregards Plaintiffs' argument that it should apply jurisdiction under § 302(a)(3)(ii).

The Court next analyzes Plaintiffs' theory of jurisdiction under the alter-ego and successor liability theories.

### c.   Alter-Ego Jurisdiction

"The crux of the alter-ego theory of personal jurisdiction is that courts are to look for two entities acting as one, . . . an inquiry that we have compared to piercing the corporate veil[.]" *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 274–75 (2d Cir. 2023) (internal quotation marks and citations omitted). "[T]he corporate veil will be pierced only when it can be

demonstrated that the [corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989).

"Establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009); *Essar Steel Algoma Inc. v. Nevada Holdings, Inc.*, No. 17-MISC-360 (AT) (RWL), 2020 WL 2539031, at *4 (S.D.N.Y. May 18, 2020) (same). "In determining whether an entity is properly understood as an alter-ego for jurisdictional purposes," courts consider a variety of factors. *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *10 (S.D.N.Y. Mar. 10, 2021). Among these are ""[1] whether there was a failure to observe corporate formalities, [2] evidence of undercapitalization, [3] intermingling of personal and corporate funds, [4] shared office space and phone numbers, [5] any overlap in ownership and directors and [6] whether the corporation was used to perpetrate a wrongful act against the plaintiffs.'" *Id.* (quoting *Cardell Fin. Corp v. Suchodolski Assocs.*, 2012 WL 12932049, at *20 (S.D.N.Y. July 17, 2012)). No single factor is determinative, but "the key inquiry is whether the corporation 'is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends.'" *Cardell*, 2012 WL 12932049, at *20 (citing *Miramax Film Corp. v. Abraham*, 2003 WL 22832384, *8 (S.D.N.Y. Nov. 25, 2003)). "[A] finding that a corporation is an alter ego of another entity is warranted when doing so will achieve an equitable result." *Miramax*, 2003 WL 22832384, *8.

A plaintiff must make sufficient allegations of fact to create an inference that Defendants had alter-ego status. "Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief[.]" *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020). *See also JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526–27 (S.D.N.Y. 2013) (a plaintiff making allegations upon information and belief must support the allegations by stating facts the belief is founded on). "Mere conclusory allegations are not enough to establish jurisdiction." *HSM Holdings*, 2021 WL 918556, at *10 (citation omitted) (finding it "insufficient for Plaintiff to assert the conclusion that the entities did not observe corporate formalities and that the . . . Defendants collectively exercise ultimate control over the same entities and direct the revenues of each"). Stating "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003); *see also Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, 2014 WL 3857053, at *9 (S.D.N.Y. Aug. 5, 2014) (same). "[G]eneralized and conclusory allegations regarding common ownership, employees, management, control, and decisionmaking between [the entities] . . . . are plainly insufficient to state a claim of alter ego status." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014); *Giuliano v. Barch*, 2017 WL 1234042, at *12 (S.D.N.Y. Mar. 31, 2017) (conclusory allegations or those made "upon information and belief" that defendants "exercised complete domination and control" over a company failed to establish alter-ego jurisdiction).

However, a plaintiff alleging a theory of alter ego "need only make a *prima facie* proffer of facts that would, if true, suffice to demonstrate that the exercise of personal jurisdiction is appropriate." *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15-CV-09003 (LTS) (SN), 2017 WL 3726754, at *3 (S.D.N.Y. Aug. 28, 2017) (citing *Dorchester*, 722 F.3d at

85). "Ordinarily, pleadings of fraud cannot be based on information and belief, except where the facts are peculiarly within the opposing party's knowledge[.]" *In re Extended Stay, Inc.*, No. 09-13764-JLG, 2020 WL 10762310, at *103 (Bankr. S.D.N.Y. Aug. 8, 2020) (quoting *Nisselson v. Softbank AM Corp. (In re Marketxt Holdings Corp.)*, 361 B.R. 369, 385 (Bankr. S.D.N.Y. 2007)). In *Extended Stay*, the court permitted plaintiff to plead fraud allegations upon information and belief because "specific information regarding the Transfers is within the Defendants' knowledge and control." *Id.*

"In considering whether an individual and a corporate entity are alter-egos of one another, '[i]t is well settled that . . . courts are reluctant to disregard the corporate entity.'" *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 632 F. Supp. 3d 562, 570 (S.D.N.Y. 2022) (quoting *William Wrigley*, 890 F.2d at 600). The corporate veil may be pierced "when the corporation has been so dominated by an individual . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *William Wrigley*, 890 F.2d at 600 (internal quotation marks and citation omitted). *See also In re Platinum*, 61 F.4th at 276 (This Circuit has "disregarded corporate formalities when a corporation's owner exercises 'total and exclusive domination of the corporation.'") (quoting *S. New Eng. Tel. Co.*, *v. Glob. NAPs Inc.*, 624 F.3d 123, 139 (2d Cir. 2010)). Plaintiffs have not made a sufficient showing to support disregarding the corporate form of the entities.

Regarding the individual Defendants, the Court must look to specific allegations in the Complaint regarding Individual Defendants. Plaintiffs contend Individual Defendants are the alter-egos of the entities based on their status as officers of the corporation. Compl. at ¶¶ 59, 86–99, 134, 169. Plaintiffs do not allege Individual Defendants conducted business in their own names, nor that they had individual liability. "Evidence of financial commingling is particularly

important in determining whether an individual is an alter-ego of a corporation. Indeed, the Second Circuit has found clear error where district courts have held an individual principal to be an alter-ego absent such evidence of financial comingling." *Liberty Highrise*, 632 F. Supp. 3d at 571–72 (collecting cases). *See also Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 132 (2d. Cir. 1997) (finding there was "no evidence that [the individual] used [the corporation's] funds for personal matters or intermingled corporate funds with his own"). Plaintiffs generally allege Defendants commingled assets with the corporate entities. Compl. at ¶¶ 85, 157. But crucially, Plaintiffs have not set forth facts to support the contention that Individual Plaintiffs intermingled corporate funds with their own.

Many of Plaintiffs' critical allegations as to Defendants' alter-ego status is purported to be "on information and belief," yet Plaintiffs have not provided the basis for their information or belief. *See e.g.,* Compl. at ¶¶ 33–45, 85, 93–98, 107, 111–112, 117–118, 123, 125–126, 133–134, 145, 147–150. One of Plaintiffs' central allegations is that "[u]pon information and belief, the transfer of Vidbox Mexico's assets was done at the direction, knowledge and cooperation of the Individual Defendants with the intent to render Vidbox Mexico judgment proof, while at the same time funding Hempacco's new business." *Id.* at ¶ 111. Plaintiffs do not detail how Defendants cooperated to transfer assets fraudulently, or why their only intent was to render Vidbox Mexico "judgment-proof." Plaintiffs assert no specific facts supporting their claims, instead relying on conclusory allegations.

Plaintiffs argue that "setting forth some examples of alleged domination may provide sufficiently specific factual allegations to support an alter ego claim and result in denial of the motion to dismiss." *SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, No. 12 CIV. 7280 (ALC) (DCF), 2013 WL 5366373, at *11 (S.D.N.Y. Sept. 25, 2013) (quoting *In re*

*Sunbeam Corp.*, 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002)) (finding plaintiff's conclusory allegation failed to meet the "heavy burden" required to establish domination and control); *see also In re Verestar, Inc.*, 343 B.R. 444, 465 (Bankr. S.D.N.Y. 2006) (plaintiffs sufficiently plead an alter ego theory by alleging entity "attempt[ed] to shield itself from Verestar's liabilities but raiding the assets at will" and controlled the entity's cash).

Here, Plaintiffs allege Piancone and Olson's domination and control over Vidbox Mexico, Hempacco, and MFOF is established by common ownership among the entities and commingling of assets. Defendants do not dispute that Piancone holds shares in Vidbox Mexico and MFOF, that Olson holds shares in MFOF, or that Piancone and Olson hold positions at both entities. Compl. at ¶¶ 86–92. Plaintiffs assert Defendants fraudulently transferred Vidbox Mexico's kiosks to MFOF "without any articulable consideration," *id.* at ¶¶ 116–118, and MFOF's subsequently transferred those same kiosks to Hempacco for a total value of $3,638,357, but no consideration was exchanged, *id.* at ¶¶ 120, 122–123. Both allegations are made upon information and belief, and Plaintiffs do not state facts to support them. Plaintiffs do not respond to Defendants' accusation that long before Plaintiffs loaned Vidbox Mexico funds in 2018, "Vidbox Mexico originally sold the 600 automated retail kiosks to MFOF in 2016 and 2017 for $7.5 million as part of two sale-lease back agreements." ECF No. 21 at 9-10, 31. Neither do they address Defendants' contention that MFOF received 8,000,000 Series A Preferred Shares of Hempacco in the transaction. *Id.* at 10, 31. If true, Defendants' assertions that the entities received consideration for the transfers undercut a critical point in Plaintiffs' alter-ego theory. Defendants' assertions weigh against finding that Defendants abused the corporate form to "achieve fraud" or "primarily transact[] the dominator's business rather than its own." *Wrigley*, 890 F.2d at 601.

Plaintiffs allege Defendants undertook these transfers to frustrate the ability of Vidbox Mexico and Guarantor to satisfy the Judgment, and to fund Hempacco's new business. *Id.* at ¶¶ 109–112. Plaintiffs claim "Hempacco and MFOF, through Piancone and Olson, exercised complete domination and control over Vidbox Mexico with respect to the series of fraudulent transactions" to transfer the kiosks to MFOF without consideration. *Id.* at ¶ 156. Plaintiffs also allege that "Vidbox Mexico does not have sufficient assets to satisfy the Judgment due to the fraudulent transfer of the Kiosks" and Vidbox Mexico is unable to pay storage fees for other kiosks stored in Ohio *Id.* at ¶¶ 125–130. Similarly, both allegations are made upon information and belief. In addition, Plaintiffs allege Defendants "likely" transferred "other valuable assets" but do not detail what those other assets are, or if these assets were transferred in the same Vidbox Mexico and MFOF transaction. *Id.* at ¶¶ 5, 85. Plaintiffs' strongest support for its claim that Vidbox Mexico lacks sufficient assets is its alleged inability to pay storage fees. This alone is insufficient to support Plaintiffs' contention that Vidbox lacks sufficient assets to satisfy the Judgment.

Critically, Plaintiffs do not meet the standard that they have proposed – they have not set forth sufficient examples of alleged domination to support their alter-ego theory. There is no clear explanation as to how Piancone and Olson exercise dominion and control over the entities. There is no support in the Complaint for the contention that Defendants freely transferred funds between Vidbox Mexico, Hempacco, MFOF, or Individual Defendants. Neither do Plaintiffs state their basis for believing Vidbox Mexico was undercapitalized, or detail which corporate formalities were not observed between the entities.

Neither do Plaintiffs make the case that their claims are based on information and belief because the "specific information regarding the Transfers is within the Defendants' knowledge

and control." *In re Extended Stay*, 2020 WL 10762310, at *103; *see also Nisselson*, 361 B.R. at 385. Plaintiffs have not made "a *prima facie* proffer of facts that would, if true, suffice to demonstrate that the exercise of personal jurisdiction is appropriate" when alleging an alter-ego theory. *Centauro*, 2017 WL 3726754, at *3 (citation omitted).

As a result, Plaintiffs' "purely conclusory allegations of alter-ego status will . . . not survive a motion to dismiss." *Webb v. Mentor Worldwide LLC*, 453 F. Supp. 3d 550, 562 (N.D.N.Y. 2020).

### d. Successor Liability Jurisdiction

Plaintiffs allege "Hempaco, MFOF, Pancone, and Olson are successors of Vidbox Mexico" for the purposes of jurisdiction. Compl. at ¶¶ 165–186. "To state a claim based on successor liability, a plaintiff must plead enough facts for the Court to infer that one of the exceptions to the general rule finding that a business entity acquiring the assets from another business generally results in no successor liability." *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 456 (S.D.N.Y. 2015) (internal citations and quotation marks omitted). The exceptions are: "(1) where the buyer expressly assumed the debt at issue; (2) where the transaction amounted to a fraud; (3) where the transaction constitutes a *de facto* merger; or (4) where the successor is a mere continuation of the predecessor." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003) (citations omitted). "A claimant must also plead a non-speculative basis for imposing successor liability within the framework of these exceptions." *In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 652 B.R. 16, 26 (Bankr. S.D.N.Y. 2023). Plaintiffs posit the later three exceptions to successor liability apply here.

### i. Buyer Assumed Debt

This exception is inapplicable to this case as no buyer expressly assumed Vidbox Mexico's debt.

### ii. Fraudulent Transaction

Plaintiffs' arguments are centered on the allegedly fraudulent transaction of Vidbox Mexico's kiosks to MFOF with the intent render Vidbox Mexico judgment-proof. Plaintiffs allege the transfer of the kiosks from Vidbox Mexico to MFOF was worth $3.6 million, yet Vidbox Mexico did not receive "any articulable consideration." Compl. at ¶¶ 116-118, 166. Plaintiffs contend the transfers violated of the Section 11(f) of the Notes because they were completed without first obtaining Plaintiffs' consent. *Id.* at ¶ 115.

The court in *Silverman Partners LP v. Verox Grp.* found plaintiffs' claims that defendant "devised a scheme where they created [successor] to avoid the debts and obligations . . . owed to Plaintiff, and that the transfer was made . . . with actual intent to hinder, delay and/or defraud Plaintiff as a shareholder and creditor" survived motion to dismiss. No. 08 CIV 3103 (HB), 2010 WL 2899438, at *6 (S.D.N.Y. July 19, 2010). *See also Snowbridge Advisors LLC v. ESO Capital Partners UK, LLP*, 589 F.Supp.3d 401, 420 (S.D.N.Y. 2022) (applying de facto merger and mere continuation doctrines where after a merger debtor retained "minimal assets" to render it "effectively judgment proof" and defraud Plaintiff creditor). The Court notes that in *Silverman*, Defendant transferred all of its assets to its successor, which is not the case here. Plaintiffs admit Defendants retain ownership of kiosks located in Ohio, but contend those kiosks are in an unusable state. Compl. at ¶ 130.

Plaintiffs allege the transfer of kiosks from Vidbox Mexico to MFOF was an attempt by Plaintiffs to avoid Vidbox Mexico's obligations to Plaintiffs and are therefore fraudulent. In addition, Plaintiffs allege Defendants "likely" transferred "other valuable assets" but do not detail what those other assets are, or if these assets were transferred in the same Vidbox Mexico and MFOF transaction. *Id.* at ¶¶ 5, 85. For the reasons stated above, Defendants' unanswered contentions regarding the transfer undercut Plaintiffs' claim. ECF No. 21 at 9-10, 31. If the

contract between MFOF and Vidbox Mexico did take place in 2016 and 2017, before Plaintiffs

loaned Vidbox Mexico funds in 2018, and Vidbox Mexico did indeed receive consideration for

the deal, this undercuts Plaintiffs' bare allegation that the transaction was motivated by "actual

intent to hinder, delay and/or defraud Plaintiff" because it is possible Vidbox Mexico was

motivated by the monetary benefit of the transaction instead. *Silverman*, 2010 WL 2899438, at

*6.

### iii.  De Facto Merger

"A de facto merger occurs when a transaction, although not in form a merger, is in

substance a consolidation or merger of seller and purchaser." *Cargo Partner*, 352 F.3d at 45. The

"hallmark" elements of de factor merger in New York include:

> (1) continuity of ownership; (2) a cessation of ordinary business
> and dissolution of the acquired corporation as soon as possible; (3)
> assumption by the successor of the liabilities ordinarily necessary
> for the uninterrupted continuation of the business of the acquired
> corporation; and (4) a continuity of management, personnel,
> physical location, assets, and general business operation.

*Martin Hilti*, 137 F. Supp. 3d at 456 (quoting *Societe Anonyme Dauphitex v. Schoenfelder Corp.*,

No. 07 Civ. 489, 2007 WL 3253592, at *3 (S.D.N.Y. Nov. 2, 2007) (citation omitted). A party is

not required to show each element. *Id. See also Cargo Partner*, 352 F.3d at 46 ("not all of these

elements are necessary to find a de facto merger.") (citation and alteration omitted). "Although

the court examines all of the foregoing factors, continuity of ownership is the essence of a

merger, and the doctrine of *de facto* merger cannot apply in its absence." *Priestly v. Headminder,*

*Inc.*, 647 F.3d 497, 505-06 (2d Cir. 2011) (*per curiam*) (quoting *New York v. Nat'l Serv. Indus.,*

*Inc.*, 460 F.3d 201, 211 (2d Cir. 2006) (internal quotation marks omitted). *See also Audio*

*Emotion S/A v. McIntosh Grp., Inc.*, 707 F. App'x 729, 731 (2d Cir. 2017) ("We have recognized

that the doctrine cannot apply absent continuity of ownership, which is the essence of a

merger.") (quotations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by adequate factual allegations" and not only bare legal conclusions. *Priestly*, 647 F.3d at 505-06.

At the threshold, Plaintiffs fail to provide any clarity as to how Hempaco, MFOF, Piancone, and Olson are all simultaneous successors of Vidbox Mexico, particularly because no merger occurred. Importantly, there is no successor liability for an individual to a corporate entity. *Itria Ventures, LLC v. O'Keefe*, 635 B.R. 15, 23 (N.D.N.Y. 2021). ("Courts in New York apply the [successor liability] doctrine where the successor in interest is a corporation, not an individual[.]" *Id.* Plaintiffs attempt to impose successor liability on Individual Defendants based on their status as officers. Compl. at ¶¶ 59, 86–99, 134, 169. However, "[s]uccessor liability may not be imposed on an individual where there is merely evidence that the individual incorporated the successor entity [or] is an officer or major shareholder of that entity[.]" *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14 CIV. 4335 LGS, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015). As such, the Court declines to extend successor liability to Individual Plaintiffs. The Court now examines successor liability jurisdiction over Hempacco and MFOF.

### 1.   Continuity of Ownership

"[C]ontinuity of ownership is the linchpin of both a de facto merger and a mere continuation." *Randle v. AC Asset Servs. LLC*, No. 19-CV-01074-LJV, 2022 WL 2680079, at *4 (W.D.N.Y. July 12, 2022). "[C]ontinuity of ownership requires not only that 'the business of the corporation continues,' but that the company itself continues through common owners or the 'common identity of directors [and] stockholders.' *Id.* (quoting *Societe Anonyme*, 2007 WL 3253592, at *5). Critically, Plaintiffs must show an ownership interest, and "[t]he continuity of ownership element typically is satisfied where the purchasing corporation pays for the acquired assets with shares of its own stock. The seller therefore continues to own the assets it has sold

through its ownership of shares in the purchasing corporation." *Nat'l Serv. Indus., Inc.*, 460 F.3d at 210 n. 2. Continuity of ownership "exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction." *In re N.Y.C. Asbestos Litig.*, 15 A.D.3d 254, 256, 789 N.Y.S.2d 484 (1st Dep't 2005). *See Quality Door & Hardware, Inc. v. Stanley Sec. Sols., Inc.*, No. 19-CV-4574(JS)(AKT), 2020 WL 6582010, at *5 (E.D.N.Y. Nov. 10, 2020) (dismissing de facto merger claim when plaintiff alleged common managers and employees, but did not establish continuity of ownership). In New York, it is sufficient to allege that "shareholders of the selling corporation hold even an indirect interest in the assets." *SungChang*, 2013 WL 5366373, at *14 (citation omitted).

Here, Plaintiffs challenge the transaction between Vidbox Mexico and MFOF. There is no evidence that MFOF purchased assets from Vidbox Mexico with ownership shares, nor that Individual Defendant shareholders became shareholders of MFOF as a result of the purchase. In fact, Defendants contend Vidbox Mexico originally sold the kiosks to MFOF in 2016 and 2017 for $7.5 million. ECF No. 21 at 9-10, 31. Therefore, there is no continuity of ownership.

### 2. Cessation of Ordinary Business & Dissolution of Acquired Corporation

"[T]he dissolution factor may be met when the corporation is shorn of its assets and has become, in essence, a shell[.]" *Silverman*, 2010 WL 2899438, at *5 (internal quotation marks and citations omitted) (finding the dissolution factor is met when defendant transferred all of its assets). *See also Societe Anonyme*, 2007 WL 3253592, at *4 (determining entity was a shell after it transferred its assets to successor and had no income). If a predecessor entity "survived the asset transfer as a distinct corporation, albeit in bankruptcy[,]" there is no cessation of ordinary

business. *Wensing v. Paris Indus.—N.Y.*, 158 A.D.2d 164, 167, 558 N.Y.S.2d 692 (N.Y.App.Div.1990) (successor entity "cannot be cast as its mere continuation").

Defendants argue that there is no successor liability because Vidbox Mexico "remains a legal entity with valuable assets." ECF No. 21 at 23. While no factor is dispositive, this factor weighs against finding successor liability because Vidbox has not been dissolved and maintains assets. Even if the Court were to find Vidbox Mexico was now defunct, Hempacco is in the business of selling CBD and hemp products via kiosks, and cannot be said to have maintained the "uninterrupted continuation of the business of" Vidbox Mexico to sell DVDs. *See Snowbridge*, 589 F.Supp.3d at 420 (finding sufficient factual allegations to support the continuation exception where defendant merged into debtor and carried on debtor's business).

### 3.   Successor Assumption of Liabilities

De facto merger requires "assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation[.]" *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 350 (S.D.N.Y. 2019). *See also Nat'l Serv. Indus.*, 460 F.3d at 209 (successor acquired predecessor's contracts). Here, there is no allegation that Hempacco or MFOF assumed the liabilities of Vidbox Mexico.

### 4.   Continuity of Management & Operations

The Court may consider whether there is a "common identity of directors, stockholders, and the existence of only one corporation at the completion of the transfer." *Silverman*, 2010 WL 2899438, at *5. *See also Stines v. Sanchez*, No. 21-CV-7884 (JGK), 2023 WL 3479748, at *2 (S.D.N.Y. May 16, 2023) (plaintiff made a *prima facie* showing that defendants were successors-in-interest to entity where it transferred assets, including employees and business location).

"While factors such as shareholder and management continuity will be evidence that a de facto merger has occurred, those factors alone should not be determinative." *Nat'l Serv. Indus.*, 460 F.3d at 213.

Here, Plaintiffs allege Defendants "misappropriate[ed] the assets of Vidbox Mexico to fund the startup of Hempacco's new business by using Vidbox Mexico's office space, officers, personnel, and Kiosks to conduct business for the benefit of Hempacco at the expense of Plaintiffs' ability to enforce the Judgment." Compl. at ¶¶ 109-112. Defendants do not contest that Piancone and Olson hold positions at both Vidbox Mexico and MFOF. *Id.* at ¶¶ 86–92. This factor alone is not determinative, but it weighs on favor of Plaintiffs' de facto merger theory.

### iv.  Successor Was Continuation of Predecessor

In New York, "the mere continuation exception ... is only available where 'it is not simply the business of the original corporation which continues, but the corporate entity itself.'" *SungChang*, 2013 WL 5366373, at *16 (quoting *Colon v. Multi-Pak Corp.*, 477 F.Supp.2d 620, 626–27 (S.D.N.Y. Mar 07, 2007) (citations omitted)). In *Snowbridge*, Plaintiffs successfully alleged a theory of de facto merger when after a merger debtor retained "minimal assets" to defraud creditor by "rendering [debtor] effectively judgment-proof." 589 F.Supp.3d 420. Plaintiffs in that case supported their claims by alleging that after a merger, Soho Square "retained substantially the same management team and carried on ESO Partners' business." The Second Circuit has held that "to the extent that the mere continuation exception is considered distinct from the de facto merger exception," when "the predecessor entity . . . survived the asset sale as a bankrupt entity, . . . [it] renders the mere continuation exception unavailable to breathe life into plaintiff's successor liability claim. *Douglas v. Stamco*, 363 F. App'x 100, 102 (2d Cir. 2010). *See also Wensing*, 158 A.D.2d at 167, 558 N.Y.S.2d 692 (successor entity "cannot be cast

as its mere continuation" when predecessor entity "survived the asset transfer as a distinct corporation, albeit in bankruptcy.").

Plaintiffs allege that "Hempacco is a mere continuation of Vidbox [Mexico]." ECF No. 23 at 23. Plaintiffs allege Hempacco is commonly owned by Piancone, employs similar management, and acquired Vidbox Mexico's kiosks. However, Vidbox Mexico "remains a legal entity with valuable assets." ECF No. 21 at 23; Compl. at ¶¶ 113, 128. For the reasons stated above, while Plaintiffs allege Defendants exercised control over Vidbox Mexico, their allegations are insufficient to support their contention that either MFOF or Hempacco de facto merged with Vidbox Mexico. Overall, Plaintiffs have not established sufficient facts in favor of this Court exercising personal jurisdiction under a successor liability theory.

### e. Due Process

The Complaint does not allege a sufficient basis for this Court to exercise personal jurisdiction over Defendants under § 302(a)(1), or under the theories of alter-ego or successor liability jurisdiction. "Because jurisdiction is lacking under New York law, the Court need not address whether it would be consistent with federal due process requirements." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 354 (S.D.N.Y. 2020).

The Court may exercise personal jurisdiction over Plaintiffs' claims against Piancone and Olson on the basis of the forum selection clause contained in the SPAs because these Defendants are "closely related" to Vidbox Mexico due to their corporate leadership positions at that entity.

### IV.    Leave to Amend Complaint & Jurisdictional Discovery

Finally, Plaintiffs seek leave to amend their Complaint. Rule 15(a)(2) states "the court should freely give leave when justice so requires." *Id*. The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John*

*Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing

*Foman*, 371 U.S. at 178).

Plaintiffs request that if the Court finds they have failed to establish a *prima facie* case for

personal jurisdiction over Defendants, they should be entitled to jurisdictional discovery. "[I]t is

within the trial court's discretion to determine whether a plaintiff is entitled to conduct

jurisdictional discovery." *RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382, 402 (S.D.N.Y.

2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir.

2003)). However, "if the plaintiff has failed to establish a *prima facie* case for personal

jurisdiction, jurisdictional discovery is generally not granted." *Id.* (citing *Jazini*, 148 F.3d at

186).

"Even when the plaintiff has failed to establish a *prima facie* case, jurisdictional

discovery may be appropriate if the plaintiff has identified a 'genuine issue of jurisdictional

fact.'" *Id.* (quoting *Daventree v. Republic of Azer.*, 349 F.Supp.2d 736, 761 (S.D.N.Y.2004)

(citation omitted)). In the Second Circuit, "jurisdictional discovery is permitted where a plaintiff

has 'made a sufficient start toward establishing personal jurisdiction,' such that it appears there

may be a colorable jurisdictional claim." *Miami Prod. & Chem. Co. v. Olin Corp.*, 449 F. Supp.

3d 136, 187 (W.D.N.Y. 2020) (granting jurisdictional discovery where plaintiffs showed entities'

dependence on each other and significant overlap in corporate leadership). This is true "where

plaintiffs allege more than conclusory statements but without supporting facts." *Hollins v. U.S.

Tennis Ass'n*, 469 F. Supp. 2d 67, 71 (E.D.N.Y. 2006) (finding plaintiffs made a sufficient

showing of general jurisdiction under N.Y. CPLR § 301 to warrant discovery on the issue). The

Second Circuit has granted "jurisdictional discovery in order to develop the factual record

requisite for [] a showing" of jurisdiction when plaintiffs' jurisdictional allegations are neither

sparse nor insufficiently specific; they are simply insufficiently developed at this time to permit judgment as to whether personal jurisdiction is appropriate." *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002) (granting jurisdictional discovery over a German company based on its U.S. subsidiaries).

The Court finds Plaintiffs' request for jurisdictional discovery is warranted in this case. Plaintiffs have set forth a "sufficient start toward establishing personal jurisdiction," *Miami Prod.*, 449 F. Supp. 3d at 187, but are "simply insufficiently developed at this time" *Texas Int'l*, 31 F. App'x at 739. Plaintiffs have alleged "more than conclusory statements" about Defendants' control over Vidbox Mexico but lack sufficient supporting facts to support their jurisdictional claims at this time. *Hollins*, 469 F. Supp. 2d at 71. Plaintiffs' theories would benefit from gaining access to relevant documents exclusively within Defendants' knowledge.

The Court will afford Plaintiffs the opportunity to amend their Complaint to attempt to cure its deficiencies. "[A]lthough the facts alleged here are insufficient for the exercise of personal jurisdiction over [Defendants], it is possible that with" new information and jurisdictional discovery, Plaintiffs "may be able to plead legally sufficient, non-conclusory allegations establishing a *prima facie* case of personal jurisdiction over [Defendants]." *In re Lyondell Chem. Co.*, 543 B.R. 127, 155 (Bankr. S.D.N.Y. 2016). Additionally, Plaintiffs may amend their Complaint to plead jurisdiction under § 302(a)(3)(ii).

The Court hereby **GRANTS** Plaintiffs leave to file their First Amended Complaint at the conclusion of jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 19, is hereby **GRANTED** pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction against all

Defendants with respect to Plaintiffs' theories of jurisdiction under the (1) New York long-arm statute; (2) alter-ego jurisdiction; and (3) successor liability jurisdiction. Defendants' motion is also **GRANTED** pursuant to Fed.R.Civ.P. 12(b)(2) with respect to Plaintiffs MFOF, Hempacco, Pearson, Titus and Halamuda under Plaintiffs' theory of jurisdiction under the forum selection clause.

Defendants' motion to dismiss is **DENIED** with respect to Plaintiffs' claims against Piancone and Olson under Plaintiffs' theory of jurisdiction pursuant to the forum selection clause. Plaintiffs are **GRANTED** leave to amend their Complaint and to pursue jurisdictional discovery.

The Court will hold a conference on **Monday October 16, 2023 at 11:00AM**. All Parties shall appear and should contact the Court at 1-888-363-4749 (access code: 3768660).

**SO ORDERED.**

**Dated:** September 29, 2023
   New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**